UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN YELLE,                                        :
                                                   :
                    Plaintiff,                     :        Civil Action. No. 7:18-cv-10927
                                                   :
             v.                                    :        **COMPLAINT**
                                                   :
MOUNT ST. MARY COLLEGE,                            :        **JURY TRIAL DEMAND**
                                                   :
                                                   :
                    Defendant.                     :
                                                   :
------------------------------------------------------------X

## NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act ("the ADEA") and the New York Human Rights Law to correct unlawful employment practices in discriminating against and failing to promote and hire plaintiff John Yelle to a full-time faculty position as a tenure-track professor in Mount St. Mary College of Business Administration because of his gender, male, and his age. It did so after plaintiff had performed in an exemplary and excellent manner as an adjunct and visiting professor for defendant over a period of many years. As charged with greater particularity below, defendant employer discriminated against plaintiff on the basis of his sex and age, and instead chose a less qualified, and younger, woman for the tenure-track position. Such action violated the federal anti-discrimination laws, as well as the New York Human Rights Law, prohibiting discrimination on the basis of age and gender. Further, defendant St. Mary harassed plaintiff on the basis of his age and sex following its denial of the tenure-track position, and denied him continued work as an adjunct professor.

## JURY DEMAND

Plaintiff John Yelle demands a trial by jury of all issues in this action.

1

## JURISDICTION, PARTIES AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to federal laws, such as 29 U.S.C. §626(c),  Title VII, 42 U.S.C. § 2000e-(5), and 28 U.S.C. §1331, as this case arises under the laws of the United States, in particular the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et. seq.* and Title VII of the Civil Rights Act of 1964, as amended (1990).

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

3.      Plaintiff John Yelle ("Yelle") resides in Bloomingburg, New York, Sullivan  County.

4.      At all relevant times, defendant Mount St. Mary College ("the College" or "the Business School or School" or "Mount St. Mary" ) has continuously operated as an employer as defined under the ADEA, 29 U.S.C. §630, and Title VII, 42 U.S.C. § 2000e-(5), has continuously had at least 15 employees.

5.      Venue is appropriate here, because the events about which plaintiff complains occurred where defendant Mount St. Mary operates its College, and particularly where the events concerning the Mount St. Mary Business School operates and where it regularly conducts its business is in Newburgh, New York, located in Orange County, New York.  This is the appropriate federal court location for actions that arise from acts in that Orange County location.

6.      All administrative prerequisites have been met as plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.  He has satisfied the

2

prerequisites under the ADEA and has received a Right to Sue Letter from EEOC, as required for his claim under Title VII.

7.     More than thirty days prior to the institution of this lawsuit, Yelle filed charges with the Commission alleging violations of the ADEA and Title VII by defendant College and its Business School in denying him a full-time faculty position.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8.     In addition, plaintiff brings an additional claim under New York State Executive Law §§296(1)(a) and §297, the Human Rights Law, alleging that defendant Union discriminated under the New York Human Rights Law against plaintiff on the basis of his age, and bringing such in the first instance as a court action, and with no required administrative pre-requisites.  The College is a covered employer under the law.

9.     As such, plaintiff requests that the court take supplemental jurisdiction of his claims under the Human Rights Law for age and sex discrimination, and as intersectional discrimination by age and sex.  Such substantially overlap with those brought under the federal ADEA and Title VII intersectional claims.

## FACTS

10.     Plaintiff John Yelle, is in the protected age group as defined by the ADEA, and was at the time of the facts alleged here.  Yelle's date of birth is November 11, 1965, and he was 51 years old at the time of the College's discriminatory acts as alleged herein.  Yelle is also a man.

11.     In or about the start of the spring of 2016 (January 2016), the College employed Yelle as a full-time visiting Professor of Accounting, and Yelle continued as a Visiting Professor during the 2016-2017 academic year.  The College had earlier employed Yelle since

fall of 2006 as a part-time Business faculty member, an adjunct -as a non-tenured member of the Business faculty - who taught several classes in its Business School.

12.    As of 2017, Yelle had had an extremely successful career for more than a decade as an adjunct professor in the College's Business Administration department, and most recently as a Visiting Professor from the start of 2016 until the end of the 2016-2017 year.

13.    Yelle received his Doctor of Management, or Ph.D., from the University of Maryland, University College in 2012, with a concentration on Organizational Theory.  He authored a dissertation on successful family-owned businesses, "Kram's Phases of Mentoring Model:  Applicability to Successor Mentoring in Family-Owned Businesses."  Earlier, he had earned a Master of Business Administration degree from Mount St. Mary College in 2006.  At that time, he was awarded honors, with the Best Presentation and Defense of a Master's Thesis, for his earlier research on successful succession in family-owned companies.  Most recently, he received a Master of Science in Accounting from the University of Connecticut, that he received in 2015.

14.    Since 2003, Yelle has held a full-time position in Finance at Pratt & Whitney Aircraft Engines and Advanced Coating Technologies.  After 2013, Pratt & Whitney employed Yelle as a Finance Manager at Advanced Coating Technologies facility in Middletown, New York.  In those capacities, he has had responsibility for managing that facility's personnel, responsibility for accounting functions and management of accounting personnel, supervising the integration of computer IT systems, Human Resources management, and taking a lead role in continuous improvement through lean manufacturing systems.

15.    In approximately the spring of 2017, Yelle became aware of a vacancy at the College in a position as a full-time faculty member in the Business Academic department.

4

This was a tenure-track position, meaning he could in later years be reviewed and receive "tenure" status as a faculty member at the College "the tenured faculty position").

16.     When Yelle applied for this full-time tenured position, he intended to change his schedule at Pratt & Whitney so as to work more evening and weekend hours, and transition into an Operations position that would be somewhat less than full-time.

17.     Given his prior experience at the College, the Chairwoman of the Business School, Tracey Niemotko ("Niemotko"), asked Yelle to apply for the tenure-track position. Yelle understood that his Chair considered his chances good to secure the position, and that she certainly thought very highly of his performance, and asked him to apply because she believed he would be a valuable addition to the full-time faculty.

18.     Yelle completed a written application for the tenure track position.

19.     As part of that application for the tenured faculty position, Yelle submitted his academic qualifications and achievements, as well as compiled information substantiating that he had been an adjunct professor at Mount St. Mary College for the previous more than 10 years, including an additional year and a half as a full-time adjunct visiting Professor.

20.     As a part-time adjunct and sometimes full-time visiting professor during that approximately twelve years, Yelle instructed introduction to financial accounting, introduction to managerial accounting.  He had further experience teaching mid and higher level courses such as tax accounting, managerial accounting, auditing, cost accounting, computer applications and accounting, financial accounting theory, advanced accounting, and an M.B.A. capstone accounting course.  He also taught financial and managerial accounting for M.B.A's. for non-accounting majors.   Yelle also had extensive experience instructing individual courses in the areas of finance, operations management, labor relations, and wage and salary

administration, amongst others.  Sometimes he carried a load as heavy as five courses per term (as a visiting adjunct full-time professor).

21.     In both roles during this period, Yelle received consistently excellent performance appraisals from the students regarding his teaching skills and engagement as a professor.  Yelle's accolades from the students ranked amongst the highest in the College of Business Administration.  He also tirelessly and conscientiously advised and counseled students in the School on their course work and career progress, and received additional accolades from students for those efforts.

22.     Yelle received accolades regarding his performance from prior Department Chairs, particularly about being held in high esteem by students.  One former Chair had summarized Yelle's performance in approximately 2009 as having the highest evaluation ratings from students, while still also being the Department's toughest grader.  That Chair stated that this was uncommon.

23.     Yelle also received accolades and excellent summaries and references to his performance from Niemotko herself during discussions in approximately 2015, while asking Yelle to teach a fifth class, and in the period that Yelle began to discuss the tenure position with Niemotko.

24.     Further, Yelle also led an effort from Mount St. Mary to participate in and assist several local family businesses with management advice and consulting.  Such was an extremely successful outreach program to the local business community in Newburgh and cast Mount St. Mary in a very positive light in the local business community. Yelle participated in a panel with a consultant who was organizing the College's Family Business Institute**.** Years

earlier, the College had featured and advertised Yelle and filmed Yelle in promoting and marketing the College to potential students.

25.     While a Visiting Professor in 2016 and 2017, also led the effort in raising STEM education funds for the nearby Pine Bush High School.

26.     Certainly his Department Chair, and the other faculty members choosing amongst the candidates for the tenure-track position, were well aware of his excellent teaching credentials, his experience as a full-time and part-time adjunct, and the glowing student evaluations.  His colleagues were well aware of his academic background in researching family-owned businesses, and providing consulting advice from the College to several local businesses and his community activities.  Yelle submitted all of these credentials to the College as part of the application process.

27.     In fact, Niemotko  confided to Yelle that he was extremely likely to receive the full-time position, and that such was a "formality" for the 2017-2018 academic year. Niemotko stated that she had to "go through the process."

28.     Neimotko specifically told Yelle that she was "looking forward to you being" in the Department, while discussing with Yelle the composition of the future full-time faculty, which would include Yelle as an appointed member.  Niemotko also told plaintiff that he would be a "fabulous" credit to the Department.  Neimotko even discussed the free tuition that would available to Yelle's son once Yelle became a full-time faculty member.

29.     Simultaneously as the application process for the tenure position proceeded, in or about the spring of 2017, Yelle requested that Niemotko re-submit her signature on the experience certification for full CPA licensure.  Niemotko had earlier submitted her signature on behalf of Yelle in early 2017 and verifying his date(s) of having taught accounting

classes at Mount St. Mary, but Yelle requested that the certification be submitted again because Niemotko had submitted an erroneous date description in that first submission.

30.     Yelle only needed this correct submission from defendant, through Niemotko's signature as the Department Chair, in order to finalize his CPA certification as an Accountant.  In terms of timing, Yelle also knew that receiving the Accounting certification would be helpful and relevant in his application for the tenure position, as part of the job duties consisted of teaching Accounting courses.

31.     On or about June 26, 2017, Mt. St. Mary Department Chair informed Yelle that he had not received the tenured faculty position.

32.     Given his strong academic credentials, qualifications, his recognition as a skilled teacher, and his contributions to the College's community in the last decade -- as well as because of the representations already made to him by the Department Chair and a colleague -- Yelle was very disappointed and surprised that the College failed to promote him to the tenure position.

33.     Soon after learning of the tenure decision, Yelle concluded that such must have been a last-minute decision and a reversal of a prior decision to grant him the promotion to the full-time, tenure track position.

34.     Later that summer, Yelle learned that the College had instead hired a younger woman to the position.  From further research, it became evident that the individual chosen for the position, was far less qualified for the position than Yelle.  She had substantially less teaching experience than Yelle.  Further, upon information and belief, the chosen candidate has a Master's degree in Accounting and is a CPA, but without the substantial post-college

education or advanced degree, research, or substantial consulting work as performed by Yelle at the College, and earlier in his career.

35.     Further, Yelle's teaching experience at Mount St. Mary has been extensive and extremely successful, as evidenced in student and faculty reviews.  The successful applicant's teaching experience did not approach Yelle's experience nor his great success in the classroom, as evidenced by the excellent student reviews and effectiveness in motivating students in his classrooms, and his valuable efforts at counseling students.

36.     Indeed, a faculty observer at a teaching demonstration conducted by Yelle during the appointment process for the position, also told Yelle that he was "head and shoulders" above everyone else who had made a presentation.

37.     Yelle also had substantial experience teaching accounting courses in the College of Business, an area in which he had significant expertise and comfort, even as he was receiving his Accounting certification that spring.  Although Yelle did not as yet have the CPA Accountant's certification as of June 1, 2017, the College was well aware that he would soon receive it: in May 2017, Niemotko had already made her first submission certifying Yelle's experience teaching accounting classes at defendant, and she knew that Yelle  had otherwise met the requirements for the CPA certificate.

38.     Completion of the certification was only subject to the College's own minimal effort in submitting accurate and timely information about his successful completion of teaching accounting courses.  Further, Niemotko was well aware that Yelle only needed the submission of the dates of his accounting instruction in order to receive his CPA.  Upon information and belief, Niemotko and others knew that once having obtained such certification, he would be evidently and far more qualified than the individual chosen for the position.

39.     Strangely enough, after defendant's denial of the tenure position to plaintiff, for the first time the College engaged in a pattern of harassing plaintiff on the basis of his age and gender.  Through Niemotko, it began to subject plaintiff to harassment on the basis of his age and age and gender – as well as differential treatment in assisting him in receiving his accounting certification.

40.     Niemotko now elaborated to Yelle in the summer that she had no "time or inclination" in filling out the request for the CPA certification, when she had previously done so in approximately May 2017 and had readily agreed to do so again (while correcting the date error in the certification).

41.     Further, such remained in defendant's interest to do so, as Yelle was still teaching a summer course as an adjunct, and scheduled to teach one fall business course as an adjunct.

42.     During the summer of 2017, after Yelle first spoke to the Acting Dean Michael Olivette about Niemotko's refusal to certify Yelle's Accounting course teaching experience.  Olivette later telephoned Yelle and informed him that he and the President of the College were "upset" that Niemotko had never met with Yelle to sign his certification.   No such meeting ever occurred during the summer of 2017.

43.     In or about the fall of 2017, Yelle continued to teach an adjunct class in the Business Administration, but was repeatedly asked to submit a signed contract and an updated syllabus, even when he had already submitted both.  In addition, for some limited period, the Department denied him on-line access in which to review his classes and course materials, and such occurred for no articulated reason.

44.     Such were all mere pretexts in order to harass plaintiff, and to let him know that he was unwelcome to continue as an adjunct at defendant, following the denial of his request for the tenure position.  Such harassment made his performance of his adjunct duties more difficult, and tended to place his competence in a false and erroneous light.

45.     In or about September 2017, Niemotko continued to refuse to meet with plaintiff in order to explain defendant's decision to deny him the tenure position, even when Yelle had already requested such a meeting and the Dean of Students had agreed with him that Niemotko should meet with plaintiff to explain the denial of the position and promotion, and other ongoing issues.  In fact, Niemotko by email required that a meeting with Yelle be limited to twenty minutes, and then after refused to schedule it.

46.     In or about December 2017, Respondent also denied plaintiff a position as a continuing part-time adjunct professor, as he had applied again to teach an accounting course.  Defendant provided plaintiff with no reason whatsoever for this decision, even after many years of successful performance as a professor.

47.     Accordingly, plaintiff was subjected to ongoing harassment on the basis of his age and gender.  Defendant also denied him a promotion and the tenure track position on the basis of his age and gender.  As a result of defendant's actions, plaintiff suffered emotional harm, and lost back pay damages and other benefits from the loss of the full-time faculty position.

48.     Further, Niemotko's actions in refusing to choose Yelle for the tenure-track position because of his age, were part of a pattern of discrimination against older faculty members:  Niemotko had recently driven out an older female marketing professor on the basis of her age, and been replaced with a younger professor.  In fact, Niemotko had also replaced  an older Visiting business law professor with a younger law professor.  In taking such action and

depriving Yelle of the tenure-track position on the basis of age, as well as the harassment of

Yelle, defendant acted with willfulness and reckless disregard for the law.

## FIRST CAUSE OF ACTION

### ADEA

49.    Plaintiff repeats and realleges paragraphs 1 through 48 of this Complaint

as if set forth herein.

50.    Defendant violated the ADEA as alleged above, and denied plaintiff the

tenure-track position on the basis of his age, in violation of the ADEA.  Plaintiff was extremely

well qualified for the position, yet defendant chose a younger and less qualified female applicant

for the position.  Further, it harassed plaintiff on the basis of age after denying him the tenure-

track decision, and denied him continued work as a part-time adjunct professor on the basis of

his age.  There was intersectional discrimination of age and sex.

51.    As such, defendant's actions harmed plaintiff, such that it is liable to him

for backpay, lost benefits, attorneys' fees, liquidated damages, and other applicable costs and

fees.

## SECOND CAUSE OF ACTION

### Age Discrimination under Human Rights Law, Executive Law §296 (1)(a) and §297

52.    Plaintiff repeats and realleges paragraphs 1 through 51 of this Complaint

as if set forth herein.

53.    Defendant violated the Human Rights Law, as alleged above, and denied

plaintiff the tenure-track position on the basis of his age.  Plaintiff was extremely well qualified

for the position, yet defendant chose a younger and less qualified female applicant for the

position.  Further, it harassed plaintiff on the basis of age after denying him the tenure-track decision, and denied him continued work as a part-time adjunct professor on the basis of his age.

54.     As such, defendant's actions harmed plaintiff, such that it is liable to him for backpay, lost benefits, attorneys' fees, compensatory damages for emotional harm, and other applicable costs and fees.

**THIRD CAUSE OF ACTION**

**TITLE VII**

55.     Plaintiff repeats and realleges paragraphs 1 through 54 of this Complaint as if set forth herein.

56.     Defendant violated Title VII as alleged above, and denied plaintiff the tenure-track position on the basis of his age, in violation of Title VII.  Plaintiff was extremely well qualified for the position, yet defendant chose a younger and less qualified female applicant for the position.  Further, it harassed plaintiff on the basis of his sex after denying him the tenure-track decision, and denied him continued work as a part-time adjunct professor on the basis of his sex.  There was intersectional discrimination of age and sex.

57.     As such, defendant's actions harmed plaintiff, such that it is liable to him for backpay, lost benefits, attorneys' fees, compensatory damages, punitive damages, and other applicable costs and fees.

**FOURTH CAUSE OF ACTION**

**Sex Discrimination under Human Rights Law, Executive Law §296 (1)(a) and §297**

58.     Plaintiff repeats and realleges paragraphs 1 through 57 of this Complaint as if set forth herein.

13

59.     Defendant violated the Human Rights Law, as alleged above, and denied plaintiff the tenure-track position on the basis of his sex.  Plaintiff was extremely well qualified for the position, yet defendant chose a younger and less qualified female applicant for the position.  Further, it harassed plaintiff on the basis of his sex after denying him the tenure-track decision, and denied him continued work as a part-time adjunct professor on the basis of his sex.

60.     As such, defendant's actions harmed plaintiff, such that it is liable to him for backpay, lost benefits, attorneys' fees, compensatory damages for emotional harm, and other applicable costs and fees.

**WHEREFORE**, Yelle demands judgment against Defendant as follows:

(a)     on the First Cause of Action, an award of statutory damages, including back pay and fringe benefits, liquidated damages under the law, the exact amount to be proven at trial; including, but not limited to, injunctive relief such as instatement to the tenure position, position or front-pay, attorneys' fees, costs, reinstatement to the prior adjunct position, and disbursements incurred in connection with this action; and

(b)     on the Second Cause of Action, an award of backpay and fringe benefits, including injunctive relief such as instatement to the tenure position or front-pay, compensatory damages for emotional harm, and costs and disbursements incurred in connection with this action, and reinstatement to the prior adjunct position.

(c)     on the Third Cause of Action, an award of statutory damages, including back pay and fringe benefits, compensatory and punitive damages under the law, the exact amount to be proven at trial; including, but not limited to, injunctive relief such as instatement to the tenure position, position or front-pay, attorneys' fees, costs, reinstatement to the prior adjunct position, and disbursements incurred in connection with this action; and

(d)     on the Fourth Cause of Action, an award of backpay and fringe benefits, including injunctive relief such as instatement to the

14

tenure position or front-pay, compensatory damages for emotional harm, and costs and disbursements incurred in connection with this action, and reinstatement to the prior adjunct position.

Dated: Goshen, New York
       November 21, 2018

                                        FOULKE LAW FIRM

                                        By:  _s/Michael Ranis, Esq._
                                        Michael Ranis, Esq. (MBR #3757)
                                        ATTORNEYS FOR PLAINTIFF
                                        55 Main Street, 2nd Floor
                                        Goshen, NY  10924
                                        845-294-4308